United States District Court
Southern District of Texas
**ENTERED**
November 27, 2018
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| IN THE MATTER OF THE COMPLAINT OF GRINGO HONEYMOON, CORP., as owner and/or owner pro hac vice of the M/V GRINGO HONEYMOON FOR EXONERATION FROM AND/OR LIMITATION OF LIABILITY | § § § § § § § § | CIVIL ACTION NO. 3:18-CV-00124 |

### MEMORANDUM AND RECOMMENDATION

Pending before the Court is Claimant American Plastic Fab & Machine, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction (Dkt. 28), which was referred to this Court for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Dkt. 55. Having considered the briefing, applicable law, and oral argument, the Court RECOMMENDS that Claimant American Plastic Fab & Machine, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction be DENIED.

### FACTUAL BACKGROUND

David Groppell ("Groppell") contends that he was a guest aboard the M/V Gringo Honeymoon, a luxury fishing vessel, when the captain's chair he was sitting in snapped, causing him to fall from the vessel's second level to the deck below. As a result of the personal injuries he allegedly sustained from the fall, Groppell filed a lawsuit in state court in the 122nd Judicial District Court of Galveston County, Texas styled Cause No. 18-CV-0208; *Groppell v. Viking Yacht Co. et al.* (the "State Court Lawsuit"). The defendants in the State Court Lawsuit include Gringo Honeymoon Corp. ("Gringo Honeymoon") as the owner/operator of the vessel and several companies named as products liability defendants

including: American Plastic Fab & Machine, Inc. ("American Plastic"); Curbell Plastics, Inc. ("Curbell"); Frank Murray and Sons, Inc. ("Murray"); Pompanette LLC ("Pompanette"); and Viking Yacht Company ("Viking"). In the State Court Lawsuit, American Plastic filed a special appearance, a Texas state procedural device, to challenge the ability of the state court to exercise personal jurisdiction over the company.

In response to the State Court Lawsuit, Gringo Honeymoon filed a Complaint for Exoneration from and/or Limitation of Liability before this Court ("Limitation Action"). Shortly after the Limitation Action was filed, United States District Judge George C. Hanks, Jr. entered an order enjoining further prosecution of all claims arising from the voyage at issue and instructing any claimants to file their claims in the Limitation Action by June 27, 2018. At the time of Judge Hanks's order staying all litigation, the Texas state court judge handling the underlying personal injury case had not ruled upon American Plastic's jurisdictional challenge.

All the parties named in the State Court Lawsuit, with one exception, filed claims in the Limitation Action by the June 27, 2018 deadline. American Plastic answered Gringo Honeymoon's complaint, asserting that Gringo Honeymoon was not entitled to limit its liability. American Plastic also filed affirmative claims for contribution and indemnity. In particular, American Plastic claims it is entitled to indemnity from Curbell, Murray, Pompanette, and Viking and contribution from Curbell, Gringo Honeymoon, Groppell, Murray, Pompanette, and Viking. As far as factual allegations are concerned, American Plastic contends that Curbell, Murray, Pompanette, and Viking "manufactured the helm chair, installed it on the *Gringo Honeymoon* and marketed and sold the boat. Their

2

negligent designs, marketing, and/or manufacturing were a proximate cause of the damages allegedly sustained by Groppell." Dkt. 11 at 3. American Plastic maintains that "Gringo Honeymoon failed to exercise reasonable care in maintaining the chair and in letting Groppell sit on the chair, causing Groppell's injuries." *Id.* at 3–4. Last, but not least, American Plastic claims that Groppell "failed to exercise reasonable care when sitting on the bridge helm chair, causing him to break the chair, fall, and sustain injuries." *Id.* at 3.

Gringo Honeymoon answered American Plastic's claim and asserted a counterclaim against American Plastic for contribution and indemnity. Viking also filed a claim against American Plastic for contribution. With permission from the Court, Groppell amended his claim in the Limitation Action to assert products liability and negligence claims against American Plastic, Curbell, Gringo Honeymoon, Murray, Pompanette, and Viking. Groppell specifically alleges American Plastic "designed, marketed, manufactured, supplied and/or placed the bushing in the captain's chair that broke into the stream of commerce." Dkt. 43 at 10.

Less than two months after voluntarily appearing in this limitation action, American Plastic filed a Motion to Dismiss for Lack of Personal Jurisdiction. American Plastic argues that because it does not have minimum contacts with the State of Texas, the exercise of jurisdiction over the company fails to comport with traditional notions of fair play and substantial justice. Gringo Honeymoon and Groppell both vigorously oppose American Plastic's dismissal effort. Gringo Honeymoon claims that American Plastic has waived its right to contest the Court's exercise of personal jurisdiction because it voluntarily appeared and filed a claim in the Limitation Action. Groppell adopts Gringo Honeymoon's waiver

3

argument and further contends that American Plastic's contacts with Texas are such that the exercise of jurisdiction over it satisfies federal due process.

## THE LIMITATION OF LIABILITY ACT

The Limitation of Liability Act (the "Limitation Act"), 46 U.S.C. § 30501 et seq., provides shipowners the opportunity to limit their liability to the value of the owner's interest in the vessel and its pending freight where an injury or loss occurs without the shipowner's privity or knowledge. Congress passed the Limitation Act in 1851 "to encourage ship-building and to induce capitalists to invest money in this branch of industry." *Norwich & N.Y. Transp. Co. v. Wright*, 80 U.S. 104, 121 (1871). This purpose is achieved by exempting innocent shipowners from liability beyond the amount of their interest in the vessel and its pending freight.

The Limitation Act provides shipowners two means to initiate their limitation of liability rights. A shipowner can assert the Limitation Act as an affirmative defense in any court, including a state court. *See Langnes v. Green*, 282 U.S. 531, 543 (1931). Alternatively, a shipowner facing potential liability for an accident occurring on the high seas may file suit in federal court seeking protection under the Limitation Act. 46 U.S.C. § 30511. An owner seeking to invoke the Limitation Act by filing a federal court lawsuit must do so within six months of receiving notice of a claim. *See id.* Such a lawsuit shall be filed in any district in which the vessel has been attached or arrested; or, if the vessel

has not been attached or arrested, in any district in which the owner has been sued with respect to such claim.  *See* FED. R. CIV. P. SUPP. R. F(9).[1]

A shipowner seeking to limit liability must deposit an amount equal to the value of the interest in the vessel and its pending freight with the court, or give security for such value.  *See* 46 U.S.C. § 30511.  This is referred to as the limitation fund.  When a shipowner makes such a deposit or posts security, the district court must enter an injunction staying the further prosecution of claims brought against the shipowner.  *See id.*  While the stay is in effect, the federal district court will issue a notice to all persons with potential claims arising from the casualty to file their respective claims in the limitation proceeding.  *See* FED. R. CIV. P. SUPP. R. F(4).  This procedure "is known as a 'concursus,' and the purpose behind such a proceeding in federal court is to permit all actions against the shipowner to be consolidated into a single case so that all claims may be disposed of simultaneously . . . ."  *Karim v. Finch Shipping Co., Ltd.*, 265 F.3d 258, 264 (5th Cir. 2001).

A claimant who fails to file a claim in the limitation action faces the penalty of default.  This means that a claimant who fails to appear in the limitation action is forever prohibited from bringing a claim arising out of or in connection with the alleged incident.  *See* FED. R. CIV. P. SUPP. R. F(5) ("If a claimant desires to contest either the right to exoneration from or the right to limitation of liability the claimant shall file and serve an answer to the complaint . . . .").

---

[1] Because the Supreme Court found the Limitation Act to be "incapable of execution" without further instructions to the courts, the Supreme Court promulgated procedural rules to govern limitation actions.  *Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S 438, 447 (2001) (quoting *Norwich*, 80 U.S. at 123).  The procedure for a limitation action is now contained in Supplemental Admiralty and Maritime Claims Rule F.

Once all claims have been asserted in the limitation action, the court must determine a shipowner's entitlement to limit its damages. To do so, the court must employ a two-part inquiry: (1) whether negligence or unseaworthiness caused the accident, and (2) whether the ship-owner was in privity to, or had knowledge or privity of these acts of negligence or conditions of unseaworthiness. *See Farrell Lines, Inc. v. Jones*, 530 F.2d 7, 10 (5th Cir. 1976). In a limitation of liability action, the burden is on the party opposing the limitation to show negligence and/or unseaworthiness. *See id.* Once shown, the burden then shifts to the ship owner to show the owner had no privity or knowledge of the alleged negligence. *See id.*

It is important to mention that a district court has discretion to stay or dismiss Limitation Act proceedings to allow a claimant to pursue his or her claims in state court. *See Lewis*, 531 U.S. at 451. This usually happens when there is only a single claimant or where the total claims do not exceed the value of the limitation fund. In order to preserve the shipowner's right to limit its liability (and thus preserve the purpose of the Limitation Act), a claimant (or claimants) must file certain protective stipulations with the district court before the injunction will be dissolved. *See In re Tetra Applied Techs. L.P.*, 362 F.3d 338, 341 (5th Cir. 2004) (a claimant may proceed against a vessel owner in state court "if the necessary stipulations are provided to protect the rights of the shipowner under the Limitation Act").

## LEGAL ANALYSIS

The legal question currently before the Court is relatively narrow and straightforward: does a party who files a claim for affirmative relief in a limitation action

6

invoke the jurisdiction of the court by voluntarily appearing and, as a result, waive the right to challenge personal jurisdiction? Based on controlling Fifth Circuit authority and good old common sense, the Court believes the answer to this question is a resounding yes.

The Fifth Circuit's 2001 opinion in *Karim* dictates the outcome of the personal jurisdiction challenge raised by American Plastic in this case. It is, therefore, necessary to describe in some detail the factual and legal findings of that case.

In *Karim*, a plaintiff brought claims in state court for injuries he sustained on a vessel when he slipped and fell some twenty to thirty feet to the bottom of a cargo hold. *See* 265 F.3d at 261. Seeking to limit its liability, the vessel owner timely filed a limitation action in federal court and the state court action was stayed. *See id.* The plaintiff filed an answer in the limitation proceeding, contesting the shipowner's right to limit liability and seeking damages for his injuries under the Jones Act and general United States maritime law. *See id.* After receiving the appropriate stipulations, the stay was lifted and the plaintiff pursued his personal injury claims in state court. *See id.* Eventually, the state court found it lacked personal jurisdiction over the vessel owner and dismissed the plaintiff's claims. *See id.* After the state court dismissal was upheld on appeal, the shipowner moved to dismiss its federal limitation action. *See id.* at 262. The district court denied the request and the Fifth Circuit affirmed, finding that a shipowner has two options: either raise limitation as a defense in the state court proceeding, or file the limitation proceeding with the federal court. *See id.* at 265–68. Stated succinctly, the Fifth Circuit concluded that a vessel owner cannot invoke the court's power to limit its liability, and then argue that the court has no jurisdiction over it. *See id.*

In the present case, American Plastic claims that it faced a Hobson's Choice—that is, forego its personal jurisdiction defense or waive its right to seek contribution and indemnity arising from the incident at issue. *See* Dkt. 52 at 2. ("If American Plastic had not filed its [contribution and indemnity] claims [in the limitation action], Gringo Honeymoon and the other parties would have likely argued that American Plastic thereby waived such claims."). This identical argument was raised—and cursorily dismissed—in *Karim*. As the Fifth Circuit explained:

> [The shipowner] is not facing a so-called "Hobson's choice." Rather, [the shipowner] is simply attempting to invoke the protections of a federal court without fulfilling its concomitant responsibility as a result of that invocation. If a shipowner wishes to contest the jurisdiction of a United States court, it has every right to do so. However, if the shipowner wishes to avail itself of the benefits offered by this forum (here, a limitation of liability action), then it cannot complain that the court had no power over it. By invoking the statutory opportunity to limit its liability, the shipowner consents to the jurisdiction of the court.

*Karim*, 265 F.3d at 265. Although American Plastic is not a shipowner, the same analysis applies with equal force to a situation, like here, where a claimant invokes the jurisdiction of the court by filing a claim for affirmative relief and then asks the Court to dismiss the same case for a lack of personal jurisdiction.

Importantly, American Plastics did not have to file a claim in this limitation action. It could have sat back and watched the various parties duke it out in this limitation proceeding. By filing a special appearance in state court, American Plastic preserved its jurisdictional challenge in the State Court Lawsuit and nothing required American Plastic to enter the fray in federal court. American Plastic could have simply waited until the district court lifted the stay of the state court action and then proceeded to obtain a ruling

from the appropriate state court on its jurisdictional argument. Instead, American Plastic elected to throw its hat in federal court, contesting Gringo Honeymoon's right to limit liability and, most importantly, bringing claims for affirmative relief—contribution and indemnity—against multiple parties.

From a commonsense perspective, it is illogical to allow a party who voluntarily submitted to a court's jurisdiction by filing contribution and indemnity claims to later argue the court had no personal jurisdiction over it. *See id.* at 265–66. As the Fifth Circuit in *Karim* noted: parties "cannot avail themselves of the benefits under United States laws, but then refuse to bear the possible burdens under those laws." *See id.* at 268. With the Thanksgiving holiday having just concluded, a Turkey Day analogy is appropriate. If you are invited to Uncle Bob and Aunt Sally's house for the holiday, you get to enjoy the benefits: a tasty traditional meal of turkey, stuffing, and pumpkin pie. But you also have to accept the burdens that accompany the invitation: cleaning up the dishes and listening to your relatives complain about other family members. Similarly, once American Plastic submitted to the jurisdiction of the court by filing contribution and indemnity claims (the only forum in which it could assert such claims), it had to accept the burdens, not just the benefits, of being in federal court. Gringo Honeymoon correctly observes that "if a claimant, such as American Plastic, can challenge personal jurisdiction in a limitation proceeding and 'need not file claims before that Court, a concursus of claims would not be achievable and the Limitation Act would be rendered useless.'" Dkt. 51 at 8 (quoting *In re F/V Misty Blue, LLC*, No. 17-12773, 2018 WL 1837827, *n. 2 (D.N.J. April 18, 2018)).

Accordingly, American Plastic waived its right to contest this Court's exercise of personal jurisdiction over it in this limitation action.² *See Karim*, 265 F.3d at 265–66.

## CONCLUSION

For the reasons stated above, the Court RECOMMENDS that Claimant American Plastic Fab & Machine, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction be DENIED. Because the Court holds that a claimant who voluntarily files a claim in a limitation action waives its right to challenge personal jurisdiction, the Court need not address Groppel's contention that American Plastic has sufficient minimum contacts with Texas such that it would otherwise be proper for this Court to exercise jurisdiction.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED at Galveston, Texas, this 27th day of November, 2018.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE

---

² The introductory paragraph to American Plastic's Original Claim and Answer states that "This Claim and Answer is filed subject to and without waiving said Special Appearance and Claimant's contention in the State Court Lawsuit that there is no ground for the courts of the State of Texas to exercise personal jurisdiction over it." Dkt. 11 at 1. In the Court's view, this language has no real legal effect since American Plastic voluntarily invoked the jurisdiction of the federal court through the filing of claims for indemnity and contribution. To borrow a widely-held truism: actions speak louder than words.